# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Shoemaker, William Buzzard, :
Terrence Fagan, Maryann Fagan, :
Neferetiti Campbell, Tony Ganci, :
Valerie Ganci, Joseph Iudicello, :
Marshall E. Anders, Patricia Anders, :
Bradley Rinschler, Terry Lynn Teel, :
and Richard Oshrin, :
 :
 Appellants :
 :
  v. : No. 613 C.D. 2021
 : Argued: September 12, 2022
Smithfield Township Board of :
Supervisors and Water Gap Capital :
Partners, LLC :

BEFORE: HONORABLE MICHAEL H. WOJCIK, Judge
  HONORABLE LORI A. DUMAS, Judge
  HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK   FILED: February 27, 2023

Appellants (Objectors)[1] appeal from an order of the Court of Common Pleas of Monroe County (trial court), dated April 30, 2021, which affirmed the September 22, 2020 decision of the Smithfield Township (Township) Board of Supervisors (Board) that concluded that the Smithfield Township Zoning Ordinance

---

[1] Objectors are John Shoemaker, William Buzzard, Terrance Fagan, Maryann Fagan, Neferetiti Campbell, Tony Ganci, Valerie Ganci, Joseph Iudicello, Marshall E. Anders, Patricia Anders, Bradley Rinschler, Terry Lynn Teel, and Richard Oshrin.

(Ordinance) was exclusionary because it did not permit a residential drug and alcohol rehabilitation facility in the Township, and granted Water Gap Capital Partners, LLC (Water Gap) a curative amendment to allow the same as a conditional use. Objectors seek reversal of the trial court's decision arguing that the Ordinance is not exclusionary, the Township's newly created ED – Economic Development Zone (ED Zone) cured any exclusion of such use in the Ordinance, and Water Gap's *de facto* operations mooted its exclusionary challenge. Discerning no error, we affirm.

## I. Background

This case arises out of Water Gap's request for curative amendment to the Ordinance to allow the operation of a residential drug and alcohol treatment facility (proposed use) as a conditional use in the Township's R-1 Low Density Residential Zone (R-1 Zone).[2] The location for the proposed use is a 40-acre tract of land (Property) that was part of a 156-acre golf resort known as the Water Gap Country Club.[3] The Property is improved with an inn, pro club, golf course, swimming pool, and parking areas. Water Gap renovated the inn with new electrical wiring, HVAC, ceilings and flooring, and improved the existing water and septic systems. The inn has 24 double occupancy rooms with a maximum capacity of 48

---

[2] Principal permitted uses allowed in the R-1 Zone include conservation subdivision; single-family detached dwellings; membership clubs, camps, and associations; communications towers; and municipal recreation and entertainment facilities. Conditional uses include federal, state and county buildings; assisted living facilities; bed and breakfasts; inns; planned residential developments; resorts; and schools, colleges, and educational facilities. *See* Original Record (O.R.), Ordinance, Schedule of District Regulations.

[3] The 156-acre parcel is located in both Smithfield Township and the Borough of Delaware Water Gap, but the subject Property is located entirely within Smithfield Township.

2

people. Water Gap has used the Property to house patients receiving treatment at Water Gap's offsite outpatient facility located in East Stroudsburg.

Following a determination from the Township zoning officer that the proposed use was not recognized under the Ordinance, Water Gap sought relief in a separate proceeding pursuant to Section 302.2 of the Ordinance[4] (Section 302.2 proceeding). Water Gap challenged the Ordinance as exclusionary on the basis that it did not permit a residential drug and alcohol rehabilitation facility anywhere within the Township. Although "hospital" and "specialty hospital" are uses permitted in other zones in the Township, the Board found that residential drug and alcohol treatment facilities did not fit within either of these definitions or fall within any other category of use within any zoning district under the Ordinance. To remedy the exclusion, the Board allowed Water Gap to proceed with a conditional use application. Objectors, who are neighboring property owners that were granted party status, appealed the Board's decision to the trial court.

---

[4] This section provides:

> If a proposed use is not included in any category of uses or within any zoning district on the Schedule of District Regulations, the [Board] shall render a formal determination as to whether or not the use is permitted in a given district and if the use is permitted, it shall then process the application as a conditional use. The Board of Supervisors shall make its determination on the basis of similarities of the use to other specifically listed uses within various districts, taking into consideration the impacts of the use on the community and the neighborhood in which it is proposed. This provision is intended to avoid being exclusionary with respect to unlisted uses not otherwise prohibited by this Chapter. This provision shall not be used to reclassify uses that are already listed nor shall the Board of Supervisors allow any use which is not listed in a particular district if that use is already permitted in another district.

O.R., Section 302.2 of the Ordinance.

By decision dated June 10, 2020, the trial court agreed that the Ordinance was exclusionary. *See Shoemaker v. Smithfield Township Board of Supervisors* (C.C.P. Monroe, No. 009420-CV-2019, filed June 10, 2020) (*Shoemaker*). However, the trial court determined that Section 302.2 of the Ordinance was an invalid procedure for curing a defective zoning ordinance and that Section 609.1 or 609.2 of the Pennsylvania Municipalities Planning Code (MPC)[5] provided the exclusive remedial procedures. Significantly, no appeal was taken from the trial court's decision. Reproduced Record (R.R.) at 23a.

Two days later, on June 12, 2020, Water Gap filed a Curative Zoning Ordinance Amendment Request to allow the proposed use in the R-1 Zone as a conditional use pursuant to Section 609.1(c) of the MPC,[6] which is the subject of the current appeal. Following a public hearing and by decision dated September 22, 2020, the Board granted Water Gap's curative amendment to allow the proposed use on the Property as a conditional use. Objectors appealed. The trial court received additional evidence, including the record of the Section 302.2 proceeding and the *Shoemaker* opinion per stipulation by the parties, R.R. at 19a-23a,[7] and reviewed the matter *de novo*. By decision dated April 30, 2021, the trial court determined that

---

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10609.1, 10609.2.

[6] *Reenacted and amended* by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10609.1(c).

[7] Although the parties agreed to the admission of the *Shoemaker* opinion, they noted they were not necessarily agreeing with the legal analysis or factual findings expressed therein. R.R. 22a-23a.

4

Water Gap was entitled to its curative amendment and affirmed the Board's decision. Objectors' appeal to this Court followed.[8]

## II. Issues

Objectors seek reversal of the trial court's decision on three grounds. First, Objectors contend that the trial court erred in concluding that the Ordinance did not permit a residential drug and alcohol rehabilitation facility anywhere in the Township and was thus, exclusionary, even though the Ordinance permitted broadly defined "hospitals" and "specialty hospitals." Second, the trial court erred by granting Water Gap's curative amendment where the Board enacted a zoning amendment specifically permitting drug and alcohol rehabilitation facilities in a newly created ED Zone that cured any exclusion of such use in the Ordinance. Third, Objectors argue that the trial court erred by refusing to recognize uncontradicted testimony that Water Gap was in fact operating a residential treatment facility, in conjunction with a licensed outpatient facility located outside of the Township, and that such operation rendered Water Gap's challenge of the Ordinance as exclusionary moot.

## III. Discussion
### A. Exclusionary Ordinance

First, Objectors contend that the trial court erred in finding that the Ordinance improperly excluded drug and alcohol rehabilitation centers. Although the Ordinance did not specifically list that use, the B-2 Business and Professional Office/Medical District (B-2 Zone) expressly permitted "hospitals" and "specialty

---

[8] "Where the trial court takes additional evidence, '[o]ur review is limited to a determination of whether or not the [trial court] abused its discretion or committed an error of law.'" *Larock v. Board of Supervisors*, 961 A.2d 916, 923 (Pa. Cmwlth. 2008) (quoting *Christ United Methodist Church v. Municipality of Bethel Park*, 428 A.2d 745, 746 (Pa. Cmwlth. 1981)).

hospitals," which, when broadly defined, encompass drug and alcohol rehabilitation centers. Consequently, the Ordinance was not exclusionary and there was no need for a curative amendment.

Initially, we note that, in *Shoemaker*, the trial court considered whether the proposed use was excluded from the Ordinance in a case involving the same parties and the same issues in the Section 302.2 proceeding. The trial court found that "[t]he use of a drug and alcohol treatment facility is not listed as a permitted, conditional or accessory use in any zoning district in [the] Township. The term 'drug and alcohol rehabilitation facility' is not defined in the [O]rdinance." *See Shoemaker*, slip op. at 2. "There is no dispute here that the [] Ordinance did not identify a 'drug and alcohol rehabilitation facility' as a permitted use in the R-1 [Z]one. In fact, the [O]rdinance *did not permit the use in any zone*. The [O]rdinance contains no definition of the use . . . ." *Id.* at 7 (emphasis added). The trial court continued:

> Where an ordinance fails to provide for a legitimate use and the municipality fails or is unable to adequately justify that exclusion by demonstrating its substantial relationship to the promotion of the public health, safety and welfare, that ordinance is not a rational exercise of the zoning power and is therefore invalid.

*Id.* at 8. Critically, no appeal was taken from this decision. The parties stipulated to the incorporation of the Section 302.2 proceeding in this matter. R.R. at 19a.

Because the issue was finally determined in *Shoemaker*, it appears that the relitigation of this issue is barred by the doctrines of res judicata and collateral estoppel.[9] Curiously, neither Water Gap nor the Board raised the issue. Although

---

[9] "Res judicata encompasses two related, but distinct principles: technical res judicata and collateral estoppel." *J.S. v. Department of Human Services*, 221 A.3d 333, 341 (Pa. Cmwlth. 2019) **(Footnote continued on next page…)**

6

this Court may raise the issue *sua sponte*, we will address the merits. *See In re Nomination Petitions and Papers of Stevenson*, 40 A.3d 1212, 1223 (Pa. 2012) ("The failure of the parties to raise the issue does not tie the court's hands. Rather, a court may, 'in appropriate cases,' *sua sponte* raise the issue of the preclusive effect of a prior judgment" to conserve judicial resources.).

Section 609.1 of the MPC provides: "(A) landowner who desires to challenge on substantive grounds the validity of a zoning ordinance . . . which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment . . . ." 53 P.S. §10609.1. The landowner bears the burden of proving that the ordinance is exclusionary. *Allegheny Energy v. Blain Township*, 829 A.2d 1254, 1261 (Pa. Cmwlth. 2002).

---

(quoting *C.J. v. Department of Public Welfare*, 960 A.2d 494, 499 (Pa. Cmwlth. 2008)). Res judicata, or claim preclusion, bars a claim where there has been a final judgment on the merits of that claim, or issue, in a prior action. *In re Coatesville Area School District*, 244 A.3d 373, 378 (Pa. 2021). It bars any claims actually litigated as well as those that should have been litigated in the prior action. *Id.* For res judicata to apply, there must be identity of (1) the issues, (2) the causes of action, (3) the persons and parties to the action, and (4) the quality or capacity of the parties suing or being sued. *Id.* Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings. *Id.*

In the same way, the doctrine of collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *In re Coatesville Area School District*, 244 A.3d at 378. Occasionally, "the courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment." *Id.*

Both doctrines are "judicially-created precept[s]" based on practical considerations including avoiding the "'cost and vexation' of repetitive litigation, conserving judicial resources, 'and, by preventing inconsistent decisions, [and] encourag[ing] reliance on adjudication.'" *In re Coatesville Area School District*, 244 A.3d at 379, 380 (quoting *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005)).

There is no dispute that the proposed use is not a permitted use or a conditional use in the R-1 Zone. The use of a drug and alcohol treatment facility was not specifically listed as a permitted, conditional, or accessory use in any zoning district.

As for whether the proposed use fits within another classification, the Township's B-2 Zone expressly permits "hospitals" and "specialty hospitals" as healthcare uses. The Ordinance defines these terms as:

> HOSPITAL - A state-licensed facility providing primary health services and medical or surgical care to persons suffering from illness, disease, injury, deformity, and other abnormal physical or mental conditions and including, as an integral part of the institution, related facilities, such as laboratories, outpatient facilities, training facilities, and medical offices.
>
> SPECIALITY HOSPITAL – A hospital that is primarily or exclusively engaged in the care and treatment of patients with a cardiac condition, orthopedic condition, a condition requiring a surgical procedure and any other Specialized category of services designated by the Secretary of Health and Human Services. Specialty hospitals are not required to provide the following: surgical services; anesthesia services; nuclear medicine services; outpatient services; psychiatric services; obstetrical and newborn services; pediatric services or emergency services.

O.R., Section 1002 of the Ordinance.

Although at first blush, it seems plausible that the proposed use could fit within one or both of these definitions, Water Gap demonstrated otherwise by uncontradicted expert evidence. Water Gap offered the testimony of Dr. Robert Morrow, M.D. (Dr. Morrow), a psychiatrist and Water Gap's chief medical officer,

8

regarding the distinctions between the proposed use and the classifications set forth in the Ordinance. As found by the trial court, Dr. Morrow testified that

> a drug and alcohol rehabilitation facility provides a different level of care than a hospital or a specialty hospital. Patients in a drug and alcohol rehabilitation facility are not in need of the primary medical care offered by a hospital. A patient coming to a residential inpatient drug and alcohol treatment facility is in need of medical oversight of detoxification for three to five days and will receive rehabilitation through individual and group counseling, education and arranging for out-patient treatment for an extended period after that. A hospital provides a higher level of care for acute illness than the residential drug and alcohol rehabilitation facility proposed here. Patients who are medically ill due to their substance addiction and are unable to safely detox in a residential setting would need the more intensive services offered by a hospital. There[,] they would be seen on daily rounds by doctors and would have twenty-four hour nursing care. The drug and alcohol rehabilitation center is a step down from that level of care, just as an assisted living center would be.

Trial Court Opinion, 4/30/21, at 17-18. Dr. Morrow further testified that some, if not many, patients addicted to drugs or alcohol also deal with mental health issues. *Id.* at 18. However, he testified that those with serious mental illness requiring treatment in a hospital would be referred to a hospital and would not be accepted at the proposed facility. *Id.*

Based upon this testimony, the trial court found that a drug and alcohol treatment facility provides a different level of care than a hospital or specialty hospital because patients in drug and alcohol treatment facilities are not in need of primary medical care. A drug and alcohol treatment facility is a step-down level of care. Objectors did not offer evidence to rebut Dr. Morrow's testimony. Based on this distinction, the trial court determined that the proposed use did not fit within any

9

classifications of use and was thus excluded from the Ordinance. Upon review, the trial court did not err or abuse its discretion in this regard.

## B. Curative Amendment

Alternatively, Objectors argue that the trial court erred by affirming the grant of Water Gap's curative amendment. At the time of the curative amendment, the Board was considering and subsequently adopted its own zoning amendment explicitly permitting drug and alcohol rehabilitation centers in a newly created ED Zone. The Board's amendment cured any exclusion, thereby making Water Gap's curative amendment unnecessary.

Section 609.2(1) provides that if a municipality determines that its zoning ordinance is invalid, it shall so declare, and it shall also propose that it will take steps to cure the invalidity. Subsection (2) provides: "Within 180 days from the date of the declaration and proposal, the municipality shall enact a curative amendment to validate, or reaffirm the validity of, its zoning ordinance pursuant to the provisions required by [S]ection 609.1 in order to cure the declared invalidity of the zoning ordinance." 53 P.S. §10609.2(2). Subsection (3) provides the following protection if a municipality takes this course:

> *Upon the initiation of the procedures*, as set forth in clause *(1), the governing body shall not be required to entertain or consider any landowner's curative amendment filed under Section 609.1* nor shall the zoning hearing board be required to give a report requested under Section 909.1 or 916.1 subsequent to the declaration and proposal based upon the grounds identical to or substantially similar to those specified in the resolution required by clause (1)(a). Upon completion of the procedures as set forth in clauses (1) and (2), no rights to a cure pursuant to the provisions of sections 609.1 and 916.1 shall, from the date of the declaration and proposal, accrue to any landowner on the basis of the substantive invalidity of the unamended

10

zoning ordinance for which there has been a curative amendment pursuant to this section.

53 P.S. §10609.2(3) (emphasis added). "[A]fter a municipality begins its declaration procedures, the governing body is free to focus on the municipality's cure *without considering subsequently filed private challenge(s)* at the same time." *Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 30 A.3d 1083, 1092 (Pa. 2011) (emphasis added). This essentially provides the municipality a safe harbor within which to act. However, such did not occur here because the Board did not "initiate procedures" *before* Water Gap filed its curative amendment. Therefore, Water Gap was not required to wait for the Board to act to correct its exclusionary Ordinance. Consequently, the Board was required to consider Water Gap's curative amendment. *See id.* The Board's subsequent Ordinance correction did not override Water Gap's rights under the MPC.

## C. *De facto* Operation

Finally, Objectors argue that a curative amendment was not necessary because Water Gap was already operating a drug and alcohol rehabilitation center under the existing Ordinance. This *de facto* operation was proven by uncontradicted evidence and belies the trial court's determination that the Ordinance was exclusionary.

Objectors' argument ignores the critical distinction between an outpatient treatment facility and a residential inpatient treatment facility and ignores the underlying reason for the curative amendment — to allow Water Gap to obtain licensing from the Commonwealth as required to operate an inpatient treatment facility. The curative amendment was necessary for Water Gap to *legally* operate the proposed use on the Property in compliance with the Ordinance. The fact that Water Gap may have been operating the proposed use on the Property without a

11

license in violation of the law and without conditional use approval in violation of the Ordinance did not somehow moot Water Gap's exclusionary Ordinance challenge or otherwise obviate the need for a curative amendment.

## IV. Conclusion

Accordingly, we affirm the order of the trial court.

_____
MICHAEL H. WOJCIK, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Shoemaker, William Buzzard, :
Terrence Fagan, Maryann Fagan, :
Neferetiti Campbell, Tony Ganci, :
Valerie Ganci, Joseph Iudicello, :
Marshall E. Anders, Patricia Anders, :
Bradley Rinschler, Terry Lynn Teel, :
and Richard Oshrin, :
  :
                Appellants :
  :
            v. : No. 613 C.D. 2021
  :
Smithfield Township Board of :
Supervisors and Water Gap Capital :
Partners, LLC :

# **O R D E R**


       AND NOW, this 27th day of February, 2023, the order of the Court of Common Pleas of Monroe County, dated April 30, 2021, is AFFIRMED.


                                _____
                                MICHAEL H. WOJCIK, Judge